UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA

          v.

STEPHEN ANTHONY MARC JOHNSON

                Defendant.
------------------------------------------------------------------X

No. 95-CR-0392 (TCP)

**DEFENDANT'S REPLY TO GOVERNMENT'S POST-HEARING SUBMISSION**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 03 2005 ★

LONG ISLAND OFFICE

STATE OF NEW YORK    )
                            ) ss:
COUNTY OF NEW YORK  )

ROBERT M. SIMELS, being duly sworn, deposes and says:

1. I am the principal attorney for the defendant in this matter. I submit this Reply to the government's Post-Hearing Submission affidavit in further support of the instant motion to withdraw the defendant's previously entered plea of guilt, and/or to compel the government to submit a "5K" letter reflecting substantial assistance to the government, warranting a downward departure. This submission incorporates the three transcripts of the proceedings held before the Hon. Thomas C. Platt on March 21, 2003, March 24, 2003 and March 31, 2003 and the exhibits marked as evidence therein.[1]

---

[1] Unless otherwise noted, citations to numbered exhibits preceded by the letter "A" refer to exhibits marked into evidence during the course of the three hearing sessions held in March 2003. Citations preceded by the letter "T" refer to the transcript of the March 2003 hearing held before this Court on March 21, March 24 and March 31, 2003. Citations to numbered exhibits refer to the exhibits annexed to defendant's motion to withdraw his

1

2. This memorandum is also submitted in response to the government's post hearing opposition, which was filed on June 24, 2004.[2]

3. Should this court decide to consider the government's response, the defendant contends that the government's submission (15 months after the hearing) did not review the transcript of the proceedings, or purposefully ignored the testimony to paint a picture that is inaccurate and misleading.

4. Whether the government has sought to defend Douglas Burns' conduct in his representation of Johnson, because he was a former Assistant in their office, his father a government official, or simply because it serves their purposes to ignore the facts, the only impassioned conclusion from the evidence is that Douglas Burns rendered INCOMPETENT AND INEFFECTIVE ASSISTANCE to Marc Johnson, and violated various ethical tenets, *inter alia*, ascribed to by the Criminal Justice Act.

5. According to the evidence, Burns, claiming to be Burton Ryan's former boss to Johnson, extorted funds from Johnson, leading him to believe that unless he was paid *sub rosa*, that Johnson would go to jail for life. Contrary to the government's assertion, Johnson did not solicit Burns with the intent to pay him a fee, rather, it was Burns who aggressively and repeatedly requested funds telling Johnson he could not avoid a life sentence unless Burns

---

previously entered plea of guilt or alternatively, compel the issuance of a §5K1.1 letter, dated November 4, 2002.

[2] **Significantly, the government was required by this Court to submit its opposition by May 2, 2003. The government, despite repeated requests throughout a year's period, filed its opposition more than one year later on June 24, 2004.** We submit that this Court should disregard the government's submission as a result of their misconduct in not filing their answer as directed by this Court.

2

received funds.

6.     The government in its effort to defend Burns contends he did not violate the CJA Act, since he did not submit any vouchers for reimbursement of his legal fees. In making that assertion the government ignores the indisputable evidence that Burns submitted a voucher in January 1999. That Burns ultimately did not submit an invoice for his services as counsel was only the result of his being notified by your affiant that the issue of his solicitation of funds was going to be raised in the motion to withdraw Johnson's plea.

7.     The key to the discussion (of Burns' misconduct under the CJA Act) is not his receipt of payment of funds, but by his solicitation of a fee from Johnson. The act of solicitation alone makes him guilty of misconduct, at a time when he was serving as CJA counsel and underscores his violation of his duties to this Court and to Johnson as his attorney.

8.     Assuming *arguendo*, the Court did not want to find Burns' guilty of violating the CJA Act, and wanted to credit Burns's testimony wherein he denied receiving <u>any</u> reimbursement from CJA and that he was in fact, privately retained by Johnson, the evidence simply undermines that conclusion. Burns' self-serving statements are belied by his flagrant disregard of the requirements of the CJA Act:

- **his obligation to bring his "retention" to the attention of the court; and more importantly,**
- **that he was required to obtain the permission and approval of the presiding judge or magistrate prior to entering into the "oral retainer agreement" with some unidentified person other than the defendant.**

See Rules of the United States District Courts for the Southern and Eastern Districts of New

York, Appendix J, Eastern District, Section II(A)(5), "Retention of Appointed Counsel" ; See T 62-63.[3] CJA's counsel failure to bring *an attempt* to be privately retained by a defendant could result in expulsion from the CJA Panel. *Id.*

9. Secondly, Burns' solicitation of funds was done under false representations that the payment of the fee would result in his strong advocacy for Johnson. Burns did nothing for Johnson. It was his failure to show up for meetings with the government, for them to determine whether Johnson would be given a formal cooperation agreement, that led to those meetings being canceled, not Johnson's refusal to speak [govt memo at 11]. To conclude otherwise is to penalize the client for not speaking without his counsel being present, which is to punish him for exercising his Constitutional rights.

10. Although the government contends in their submission that Johnson was never cooperative in their initial meetings, they forwarded a draft Cooperation Agreement to Burns. **It was Burns' failure to pursue the draft Cooperation Agreement and turn it into a formal written Cooperation Agreement that led to Johnson being substantially prejudiced.**

11. **Burns' false representations to Johnson, that notwithstanding the government's January 2000 letter, which spelled out that Johnson would not be receiving a 5K1.1 motion from the government, that Burns would insure that Johnson would still receive a 5K 1.1 motion also prejudiced Johnson.**

---

[3] Unless otherwise noted, citations preceded by the letter "T" refer to the transcript of the March 2003 hearing held before this Court on March 21, March 24 and March 31, 2003. Citations to numbered exhibits refer to the exhibits annexed to defendant's motion to withdraw his previously entered plea of guilt or alternatively, compel the issuance of a §5K1.1 letter, dated November 4, 2002.

12. **It was Burns' failure to confirm in writing his claimed oral agreement with AUSA Ryan, that the government would not seek an upward enhancement at the time of sentencing, that further prejudiced Johnson, when the government's counsel conveniently claimed he could not recall that significant event at the time of the pre-sentence report's preparation.**

13. The government also misapprehends Johnson's submission. Illustratively, the government asserts that Johnson sought to elicit testimony at the hearing concerning formerly convicted Customs Agent Frank Gervacio for the purposes of establishing that the government's case against Johnson was "tainted." [govt memo at 19].

14. Johnson sought to raise the *Gervacio* matter, in connection with an entire line of questions, to demonstrate that Burns did not pursue one single item in the pre-trial or pre-plea stage of this matter on behalf of Johnson that would have either provided him a defense, or alternatively, would have permitted him to negotiate a better plea agreement.

15. As I am confident the Court will recall, Burns was provided with a plethora of information by Johnson, his previously retained investigator, and an attorney in California, that would have aided Johnson had his attorney reviewed the material, investigated it, or even raised those issues with the government to establish that Johnson might prevail at a trial. Among those materials was evidence of corrupt DEA agents, corrupt criminal defense attorneys (who were laundering money, bribing federal agents etc.); with the names of third parties who were acting as Johnson's nominees in holding property in their names; as well as information on potential properties that he owned that he sought to forfeit to the government. Burns clearly did not review or pursue any of the information.

5

16. Advocacy is expected in the submission of arguments of counsel, but like any party, the government has an obligation to seek to present a balanced picture of the events at the hearing. They did not.

17. We will not seek in seriatim to deal with those misrepresentations. One example (in addition to those set forth hereinabove) is the government's portrayal of the testimony of Agent Johnson and Scaringi. Those agents did not testify that they rejected Johnson's cooperation because of his perceived unwillingness to discuss some topics at their initial meeting. Instead, they testified that this was the norm by cooperators, and that they expected at future meetings that he, like all other cooperators, would be more candid. These efforts by Johnson were frustrated by Burns failure to appear for his client at those meetings or canceling them, or even conveying the vast material in Johnson's possession that would have encouraged the government to seek further interviews of Johnson.

18. Moreover, notwithstanding the government apparent reliance on repeating their claim that Johnson was uncooperative, their actions, and in particular the conduct of AUSA Ryan, speak louder than their sophistry. **IF JOHNSON WAS IN FACT UNCOOPERATIVE DURING HIS PROFFER SESSIONS, THE GOVERNMENT WOULD NEVER HAVE SENT A DRAFT COOPERATION LETTER TO BURNS IN 1999.**

19. The government's memorandum, not only is deceptive in its content, it is also misleading in its presentation. Purportedly quoting the record, it places testimony out of context, e.g., at p. 16, 17, where it is suggested that Johnson sought to be quiet at his interviews. The testimony of Agents Johnson and Scaringi and Detective Holmes, indicate that the defendant provided information sufficient for the agents to conduct further investigation, including the

Indian Springs property as well as schedule and conduct subsequent proffer sessions. See Defendant's "Post-Hearing Submission," dated April 25, 2003 at ¶¶ 4-35.

20. Further, the April 2002 proffer sessions were initiated, not by the Eastern District, but by the U.S. Attorney's Office for the Southern District of New York, who were investigating Anthrax. Johnson was fully cooperative with the government, identifying a potential distributor of Anthrax, and providing information on his assets.

21. In short, the government ignored Johnson's post hearing submission, mis-characterized the testimony rendered by the various witnesses who testified at the hearing, and has sought only to attempt to mislead the court with inaccurate information.

**WHEREFORE**, it is respectfully submitted that the plea of guilt entered by defendant Johnson, be vacated, or in the alternative, that the Court compel the government to provide Johnson with a 5K Letter to permit a downward departure from his Sentencing Guidelines Level.

Dated:   December 30, 2004
         New York, NY

_____
ROBERT M. SIMELS (RMS-0433)

Sworn to before me this
30th day of December 2004

_____
Notary Public

ALEXANDRA VANDOROS
Notary Public, State of New York
No. 02VA6030770
Qualified in Kings County
Commission Expires Sept. 20, 2005

# CERTIFICATE OF SERVICE

I certify that on **December 30, 2004**, I mailed a copy of the annexed **DEFENDANT'S REPLY TO GOVERNMENT'S POST-HEARING SUBMISSION,** dated December 30, 2004 by Federal Express (Priority Overnight Service), to:

> Burton Ryan, Esq.
> Assistant United States Attorney
> United States Attorney's Office,
> Eastern District of New York
> 610 Federal Plaza
> Central Islip, NY 11722
> *FedEx Tracking No.: 7298 1318 2369*
>
> Clerk of the Court
> United States District Court
> Eastern District of New York
> Long Island Federal Courthouse
> 100 Federal Plaza
> Central Islip, New York 11722
> *FedEx Tracking No.: 7921 7160 7794*
>
> Hon. Thomas C. Platt
> U.S. District Court Judge
> Eastern District of New York
> Long Island Federal Courthouse
> 100 Federal Plaza
> Central Islip, New York 11722
> *FedEx Tracking No.: 7921 7159 9656*

*[signature]*
Alexandra Vandoros, Esq. (AV8747)
Robert M. Simels, P.C.
Attorneys for Defendant
STEPHEN ANTHONY MARC JOHNSON
1735 York Avenue - Suite 35C
New York, NY 10128
Tel: (212) 369-3900
Fax: (212) 369-4516